1  Jason N. Haycock (SBN 278983)
   Jason.Haycock@klgates.com
2  K. Taylor Yamahata (SBN 347192)
   Taylor.Yamahata@klgates.com
3  K&L Gates LLP
   Four Embarcadero Center, Suite 1200
4  San Francisco, CA 94111
   Telephone: +1 415 882 8200
5  Facsimile: +1 415.882.8220

6  Attorneys for Plaintiff
   CORSAIR GAMING, INC.

7

8             UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10 | CORSAIR GAMING, INC.              | Case No.  3:24-cv-04612-TLT
11 |                 Plaintiff,        | [Assigned to the Hon. Trina L. Thompson
12 |         v.                        | and Hon. Kandis A. Westmore]
13 | DEAL BUSTER, INC.,                | **[PROPOSED] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**
14 |                 Defendant.        |
15 |                                   | Date:      January 16, 2025
   |                                   | Time:      1:30 pm
16 |                                   | Crtrm:     9, 19th Floor

17

18

19

20

21

22

23

24

25

26

27

28

Pending before the court is Plaintiff, Corsair Gaming, Inc.'s ("CORSAIR" or "Plaintiff") Motion for Entry of Default Judgment (ECF 15). against Defendant Deal Buster, Inc. ("Defendant" or "Deal Buster"). The motion is GRANTED for the following reasons.

## I.    BACKGROUND

### A.    Procedural Background

This case was filed on July 30, 2024. ECF 1.  True and correct copies of the Complaint and Summons issued by the Court were served upon Defendant Deal Buster on August 23, 2024. ECF 7.  The time for Defendant to file an answer or otherwise respond to the Complaint elapsed on September 13, 2024.  On October 15, 2024, CORSAIR requested the Clerk enter default against Deal Buster. ECF 12.  On October 16, 2024, pursuant to Federal Rule of Civil Procedure 55(a), default was entered against Deal Buster for failing to plead or otherwise defend in this action. ECF 13.

### B.    CORSAIR's Trademark Usage

CORSAIR is a Delaware corporation that designs, manufactures, and sells a variety of high-performance computer and gaming products in the United States under the "CORSAIR," "legato," "ORIGIN PC," "SCUF," and "Drop" brand names (the "CORSAIR Products").  ECF 1, Compl. ¶ 12.  The U.S. Patent and Trademark Office ("USPTO") has issued Reg. No. 3,209,882 for marks used with computer and gaming products (hereinafter, the "CORSAIR Mark").  *Id.* ¶ 14. The CORSAIR Mark has been in continuous use since at least 2007, are in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065.  *Id.* ¶¶ 15-16.  CORSAIR advertises, distributes, and sells its products to consumers under the CORSAIR Mark.  *Id.* ¶ 17.  CORSAIR's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of CORSAIR's exclusive ownership of the CORSAIR Mark.  *Id.* ¶ 19.

CORSAIR has invested significant time, money, and effort in advertising, promoting, and developing the CORSAIR Mark throughout the United States and the

1

world.  *Id.* ¶ 20.  To create and maintain goodwill among its customers, CORSAIR has taken substantial steps to ensure that products bearing the CORSAIR Mark are of the highest quality, and, as a result, the CORSAIR Mark has become widely known and are recognized throughout the United States and the world as a symbol of high-quality products.  *Id.* ¶ 24.  For example, each CORSAIR Product intended for resale into the United States market is protected by CORSAIR's warranty policy (the "CORSAIR Warranty").  *Id.* ¶¶ 25-26.  Per its terms, the CORSAIR Warranty applies only to CORSAIR Products purchased from an authorized CORSAIR reseller.  *Id.* ¶ 27.

## Overview

- Corsair provides a warranty for its products, starting from the day of purchase from an authorized Corsair reseller.
- The warranty period will vary by specific product. You can find the warranty period on the product package, in the user documentation, or the listing of Corsair warranty periods below*. If you see different warranty periods for a product, the longest warranty period applies.
- Corsair warrants that the product will be free from defects in material and workmanship for the specified period.
- This warranty is limited to the original purchaser and is non-transferable, except where prohibited by applicable local law.

**PLEASE NOTE:**

In the United States of America, the following Corsair products are only covered by Corsair's warranty if they are purchased from Corsair.com or a Corsair-authorized reseller:

- DRAM
- SSD
- Gaming chairs
- Headsets
- Keyboards
- Mice
- Mousepads
- Peripheral accessories
- Elgato-branded products

Corsair's warranty will not be available if you purchase any of the above products from an unauthorized reseller.

### C.    Deal Buster's Infringing and Improper Conduct

Defendant Deal Buster is a New York corporation connected to a Walmart Seller Account "Classy Outfit."  ECF 1, Compl. ¶ 13.  Defendant's principal place of business is 5117 20th Avenue, Brooklyn, New York 11204.  Defendant operates its business from its New York address and has sold, and is currently selling, products bearing the

1  CORSAIR Mark on online retail platforms, including, but not limited to, Walmart.com.

2  *Id.* ¶ 13.   CORSAIR is not now, nor has it ever been, affiliated with Defendant, has

3  never authorized Defendant to use the CORSAIR Mark, and has never authorized or

4  otherwise granted Defendant permission to sell CORSAIR Products.  *Id.* ¶ 35.

5  Defendant is offering for sale CORSAIR Products designed, manufactured, and

6  intended for sale into a specific geographic market (*e.g.*, the United States market or the

7  Asia market), but fulfilling orders with materially different CORSAIR Products

8  designed and intended for sale to a different geographic market.  *Id.* ¶ 3.  Despite having

9  no authority to sell CORSAIR Products online or otherwise, Defendant advertises

10  products bearing the CORSAIR Mark to consumers in the United States on the Internet:



23  (*Id.* ¶ 40).

24  Defendant falsely advertises the CORSAIR Products it offers for sale and sells

25  on the Internet to United States consumers using the CORSAIR Mark.  *Id.* ¶ 48.

26  Specifically, CORSAIR alleges that Defendant intentionally advertises and sells

27  CORSAIR Products in ways that are likely to deceive consumers and create consumer

28  confusion.  ECF 1, Compl. ¶ 46.  Defendant's sale of CORSAIR Products designed and

3

manufactured for resale into a different geographic market than the advertised geographic market is likely to cause—and has caused—consumer confusion and disappointment regarding CORSAIR's sponsorship or approval of those products.  *Id.* ¶ 49.  Defendant's advertisement and sale of CORSAIR Products without the corresponding CORSAIR manufacturer's warranty is likely to cause—and has caused—consumer confusion and disappointment regarding CORSAIR's sponsorship or approval of those products.  *Id.* ¶ 50.

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id*. at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).

Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987). Where a default judgment is granted,

the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III.  DISCUSSION

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

### i)  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this lawsuit pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States. The Court has supplemental jurisdiction over the related state law claim under 28 U.S.C. § 1367.

### ii) Personal Jurisdiction

California's long-arm statute governing personal jurisdiction "is coextensive with federal due process requirements, [making] the jurisdictional analyses under state law and federal due process [ ] the same." *Schwarzenegger v. Fred Martin Motor Co*. 374 F.3d 797, 800-01 (9th Cir. 2004). California courts have general jurisdiction over a defendant with "substantial" or "continuous and systematic" contacts with the forum, or specific jurisdiction over a defendant having sufficient "minimum contact" with the forum. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396-97 (9th Cir. 1986). A defendant establishes "minimum contacts" with the forum and is subject to the Court's specific jurisdiction if the following three prongs are met:

1. The nonresident defendant [does] some act or consummate[s] some transaction with the forum or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2.  The claim [is] one which arises out of or results from the defendant's forum-related activities.

3.  Exercise of jurisdiction [is] reasonable.

*Haisten*, 784 F.2d at 1397.

For the first prong, Defendant systematically advertises and sells CORSAIR Products in the State of California and this District through ecommerce websites, such as Walmart.com. ECF 1, Compl. ¶ 2. These CORSAIR Products are not covered by the CORSAIR Warranty, though falsely advertised that they are. *See e.g., id.* ¶¶ 39-42. Additionally, Defendant offers for sale and sells CORSAIR Products designed, manufactured, and intended for sale into a specific geographic market, yet is importing and fulfilling those orders to United States consumers, including consumers in this District, with CORSAIR Products designed, manufactured, and intended for sale into international markets. *See e.g., id.* ¶¶ 43-45. Defendant intentionally advertises and sells CORSAIR Products in ways that are likely to deceive consumers and create consumer confusion. *Id.* ¶ 46. As the Ninth Circuit has held, "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant has purposefully directed its conduct at the forum such that the exercise of personal jurisdiction may be appropriate." *Herbal Brands, Inc. v. Photoplaza, Inc.* (holding defendant who sold plaintiff's products via Amazon storefronts was subject to personal jurisdiction because the sale of products in the forum state is an intentional act and "[a]lthough the internet can be dizzyingly complex, for jurisdictional purposes, the act of selling physical products over the internet to a forum resident is substantially the same as selling those same products to a forum resident through a mail-order catalog.").

The second prong requires a showing of 'but for' causation between CORSAIR's claims and Defendant's conduct in the forum. *See MOM Enterprises*, *Inc. v. Roney Innovations, LLC*, No. 20-CV-04850-TSH, 2020 WL 8614101, at *4 (N.D. Cal. Nov. 24, 2020). Plaintiff's claims arise out of the Defendant's false advertising and sale of

6

the CORSAIR Products in the Northern District of California, and in California in general. *See* ECF 1, Compl. ¶ 10. Defendant's false advertising and sale of materially different CORSAIR Products, including those designed, manufactured, and intended for sale into international markets results in consumer confusion as well as the dilution of CORSAIR's goodwill and trade name as consumers are not receiving the products they believe they are purchasing. *See e.g., id.* ¶¶ 48-48. Plaintiff would not have been injured but for the Defendant's false advertising, unfair competition, and false designation of origin.

Once minimum contacts are established from the first two prongs, the presumption of reasonableness weighs in favor of exercising jurisdiction. *See MOM Enterprises*, 2020 WL 8614101 at *4. The third prong requires personal jurisdiction to be fair and reasonable based on a multipoint analysis of the following factors:

> (1) the extent of the purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*MOM Enterprises*, 2020 WL 8614101 at *4-5.

All factors weigh in favor of exercising jurisdiction over Defendant in this case. Defendant's unfair competition in the forum has been pervasive. *See, e.g.*, ECF 1, Compl. ¶ 62 ("Due to differences in, *inter alia*, packaging, warranty, product certification, voltage, and/or battery, the CORSAIR Products that Defendant actually delivers to consumers are materially different from the CORSAIR Products advertised by Defendant and consumers expect to receive."). Defendant sells CORSAIR Products to residents of the State of California and this District through online commerce sites such as Walmart.com and regularly conducts and solicits business with consumers in

the forum, and therefore, Defendant cannot argue that litigating in California presents some special burden. There are no state sovereignty conflicts, and California has a compelling interest in protecting consumers harmed by Defendant's conduct and protecting California based businesses from unfair competition and false advertising.

### iii) Service of Process

On August 23, 2024 at 3:30PM at 5117 20th Avenue, Brooklyn, New York 11204, Plaintiff served the Letter Report on the Filing or Determination of an Action Regarding a Patent or Trademark, Summons and Complaint and Demand for Jury Trial, and Civil Cover sheet by leaving, during office hours, copies with Mr. Arnold Handler, CEO of Deal Busters, Inc . Thereafter, copies of the documents were mailed by prepaid first class mail on August 23, 2024 in an envelope marked, "Personal and Confidential." *See* ECF 7.

### B.    Application to the Case at Bar

In considering whether entry of default judgment is warranted, courts in the Ninth Circuit consider seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim(s); (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F. 2d 1480, 1471–72 (9th Cir. 1986) (citation omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). "In applying this discretionary standard, default judgments are more often granted than denied." *Elektra Ent. Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (quoting *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

### 1.    CORSAIR Will Suffer Prejudice Absent a Default Judgment

Under the first *Eitel* factor, courts analyze whether a plaintiff will experience prejudice if they do not receive a default judgment. 782 F.2d at 1472. One of the most

important considerations is whether there is an adequate remedy available at law for plaintiff to use, absent the court granting a default judgment. *loanDepot.com LLC v. Lending Depot Mortg.*, CV 20-7820-CBM-(JPRx), 2022 WL 2155974, at *1 (C.D. Cal. Jan. 21, 2022) (collecting cases). In other words, where a failure to grant default judgment would leave the plaintiff without other recourse for recovery or without protection against a defendant's continuing misconduct, default judgment may be appropriate. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Defendant has not appeared in this action. Without a default judgment, CORSAIR is left with no options while Defendant is able to continue its misconduct and avoid liability, which rewards Defendant for its refusal to answer or otherwise respond to CORSAIR's Complaint. *See Amini Innovation Corp. v. KTY Intern. Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) ("As the [d]efendant has not appeared in this action, a default judgment is the only means available…[i]f the Court does not enter a default judgment, it will allow [d]efendant to avoid liability by not responding to [p]laintiff's claims.").

Therefore, the first *Eitel* factor weighs in CORSAIR's favor.

## 2. CORSAIR's Well-Pleaded Complaint & Supporting Evidence Establish Defendant Deal Buster's Liability

The second and third *Eitel* factors "are often analyzed together." *Bd. of Trs. Of Pac. Coast Roofers Pension Plan v. Fryer Roofing Co.*, 2017 WL 6539868, at *4 (N.D. Cal. Dec. 21, 2017). Ultimately, the Court must examine whether the plaintiff pleaded facts sufficient to establish and succeed upon the asserted claims. *See PepsiCo*, 238 F. Supp. 2d at 1175; *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499–500 (C.D. Cal. 2003). Here, CORSAIR alleges claims against Defendant for: (1) false advertising, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (2) violation of the California Business & Professions Code §§ 17200, *et seq. See generally* ECF 1.

1      *a.*     **The False Advertising Claim is Meritorious and Well**
2                **Pleaded**

3         CORSAIR's Complaint establishes a valid claim for false advertising and unfair
4    competition under the Lanham Act, 15 U.S.C. § 1125.  To succeed on a claim for false
5    advertising under the Lanham Act, a plaintiff must satisfy five elements: "(1) a false
6    statement of fact by the defendant in a commercial advertisement about its own or
7    another's product; (2) the statement actually deceived or has the tendency to deceive a
8    substantial segment of its audience; (3) the deception is material, in that it is likely to
9    influence the purchasing decision; (4) the defendant caused its false statement to enter
10   interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result
11   of the false statement, either by direct diversion of sales from itself to defendant or by
12   a lessening of the goodwill associated with its products."  *Cook, Perkiss and Liehe, Inc.*
13   *v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 244 (1990).  CORSAIR has alleged all
14   of these elements with specificity.

15        A defendant can be liable under the Lanham Act for both claims that are "literally
16   false" and those that are "true …[yet] likely to mislead of confuse consumers." *Mut.*
17   *Pharm. Co. v. Ivax Pharm., Inc.,* 459 F. Supp 2d 925, 932 (9th Cir. 1986). A literally
18   false claim can be made either explicitly, "on its face or by necessary implication." *Id.*
19   The distinction between these two claims is important, because "[t]hese two different
20   forms of falsehoods subject to an action under the Lanham Act have correspondingly
21   different evidentiary requirements. 'Where the advertisement is literally false, a
22   violation may be established without evidence of consumer deception.'" *Id.* at 933
23   (quoting *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 273 (4th Cir. 2002)). "If the
24   advertising claim is literally false, the court may enjoin the use of the claim without
25   reference to the advertisement's impact on the buying public." *Id.* (citation omitted).

26        Here, the allegations of CORSAIR's Complaint, which are now taken as true,
27   make clear that Defendant is making literally false claims regarding the CORSAIR
28   Products it sells. Specifically, Defendant advertises that the CORSAIR Products it sells

are covered by the CORSAIR Warranty, when it is not. *See* ECF 1, Compl. ¶¶ 39-42. Defendant is not authorized to sell CORSAIR Products and is not an Authorized Reseller of CORSAIR Products. *Id.* ¶ 42. Thus, the CORSAIR Warranty excludes products sold by Defendant, even though Defendant advertises that the products are warranted. *Id.* Additionally and separately, Defendant advertises and offers for sale CORSAIR Products designed, manufactured, and intended for sale into a specific geographic market, yet importing and fulfilling those orders to United States consumers with CORSAIR Products designed, manufactured, and intended for sale into international markets. *Id.* ¶ 43. Accordingly, Defendant's advertisements are literally false and the first element is easily satisfied.

As to the second element, if the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisements impact on the buying public. *Mut. Pharm. Co.,* 459 F. Supp 2d at 933. Even though it is not required, CORSAIR can easily demonstrate consumer confusion with regard to Defendant's literally false advertising. CORSAIR Products are designed and manufactured for resale into specific geographic markets. ECF 1, Compl. ¶ 28. Defendant advertises CORSAIR Products intended for sale in the United States, however, delivers products designed and manufactured for sale in other geographic markets. *Id.* ¶¶ 3, 43. CORSAIR Products designed and manufactured for resale into a specific geographic market have packaging, warranty, product certification, voltage, and/or battery differences from the same products designed and manufactured for resale into another geographic market. *Id.* ¶ 34. Consumers who ultimately purchase Defendant's falsely advertised, unwarranted CORSAIR Products believing them to be the same warranted, high-quality CORSAIR Products that they would receive from CORSAIR or an Authorized Reseller are confused when they receive a product with different packaging, warranty, product certification, voltage, and/or battery differences. *Id.* ¶¶ 43-44. Further, "[t]he sale of gray market products under the same trademarks as the authorized products is likely to confuse customers if these gray market products differ materially from the authorized

products." *Pepsico, Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059 (C.D. Cal. 1999) (holding that "products that are intended for sale abroad and imported into the U.S. market to compete with the sale of products authorized for sale in the U.S." are gray market products in violation of the Lanham Act). Defendant's actions cause consumers to not receive the product as he or she intended. *See* ECF 1, Compl. ¶¶ 43-44. As evidenced, Defendant's literally false product labeling, descriptions and advertisements deceive consumers.

CORSAIR has established that Defendant's misrepresentation is material, in that it is likely to influence the purchasing decision of consumers. It is common sense that after purchasing a product, consumers expect to receive the product that was advertised. Consumers also expect that a warranty would accompany the product purchased as the Defendant provides the URL link to CORSAIRS Warranty on its product listings. Defendant's advertisement prominently displaying the URL link to the Warranty is evidence of the importance of a warranty and that it is a material factor to a consumer's purchasing decision. The materiality of Defendant's misrepresentations is clear, and the third element is satisfied.

The fourth element, that the Defendant places the false or misleading statement in interstate commerce, is satisfied. As CORSAIR sets forth in its Complaint, Defendant makes its misrepresentations on Walmart.com.  In establishing a seller account on Walmart.com, Defendant has misrepresented the nature, characteristics, and qualities of CORSAIR Products in interstate commerce.  *See Epson Am., Inc. v. Century21 Elecs.,* No. 216CV06877SVWFFM, 2017 WL 8160095, at *5 (C.D. Cal. Feb. 15, 2017) ("The internet is generally an instrumentality of interstate commerce.").

Finally, CORSAIR has established that consumers and CORSAIR have been injured, and continue to be injured by Defendant's lessening of goodwill associated with the sale of materially different products and a direct diversion of sales. By misrepresenting the CORSAIR Products intended geographic market sale and alleged warranty which accompanies the products, Defendant entices consumers to purchase

1   products from Defendant instead of CORSAIR or a CORSAIR Authorized Reseller.
2   This deprives CORSAIR of business and goodwill, injures CORSAIR's relationship
3   with existing and prospective customers, and diverts sales of CORSAIR Products.

4           **b.**       **The False Designation of Origin Claim is Meritorious and**
5                         **Well Pleaded**

6         CORSAIR alleges unfair competition by false designation of origin under 15
7   U.S.C. § 1125(a), which requires CORSAIR to show that Defendant used in commerce:

8         any word, term, name, symbol, or device, ... which is any word, term,
9         name, symbol, or device, or any combination thereof, or any false
10        designation of origin, false or misleading description of fact, or false or
11        misleading representation of fact, which is likely to cause confusion, or to
12        cause mistake, or to deceive as to the affiliation, connection, or association
13        of such person with another person, or as to the origin, sponsorship, or
14        approval of his goods by such person.

15  15 U.S.C. § 1125(a)(1).

16        The analysis for unfair competition under Section 1125(a) is similar to the
17  analysis for a claim for trademark infringement under 15 U.S.C. section
18  1114. *Brookfield Commc'ns., Inc., v. West Coast Entm't Corp.,* 174 F.3d 1046–47 (9th
19  Cir. 1999). To succeed on an unfair competition and false designation of origin claim,
20  "plaintiff must establish that it (1) has a valid, protectable trademark that (2) defendant
21  is using in a confusingly similar manner." *BTL Indus., Inc. v. Beauty Works OC LLC*,
22  No. 8:23-cv-00654-JVS (JDEx), 2023 WL 8043830, at *5 (C.D. Cal. Sept. 21, 2023)
23  (citing *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014)). Typically,
24  courts consider eight factors in determining whether there is a likelihood of consumer
25  confusion: "(1) strength of the mark; (2) proximity or relatedness of the goods;
26  (3) similarity of the sight, sound and meaning of the marks; (4) evidence of actual
27  confusion; (5) degree to which the marketing channels converge; (6) types of goods and
28  degree of care consumers are likely to exercise when purchasing them; (7) intent of

**[PROPOSED] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**
Case No.  3:24-cv-04612-TLT

1   defendants in selecting the infringing mark; and (8) likelihood that the parties will

2   expand their product lines." *BTL Indus., Inc*, 2023 WL 8043830, at *4 (citations

3   omitted). These factors are designed to "channel the analytical process [but] they do not

4   necessarily dictate a result," and it is the "totality of facts in a given case that [will be]

5   dispositive." *Zo Skin Health, Inc. v. ForeverYoung Laser Ctr, Weight Mgmt. & Med.*

6   *Spa, LLC*, No. 822CV01141FWKES, 2022 WL 18397631, at *4 (C.D. Cal. Dec. 7,

7   2022).

8         Here, CORSAIR has sufficiently pled a claim for unfair competition and false

9   designation of origin.  The Complaint sets forth in detail the identity of the CORSAIR

10  Mark, the extent to which CORSAIR has used the CORSAIR Mark, and the widespread

11  recognition of the CORSAIR Mark due to CORSAIR's significant time, money, and

12  effort spent advertising, promoting, and developing that Mark.  ECF 1, Compl. ¶¶ 14-

13  21.  The Complaint also alleges that Defendant has used – and still uses – the CORSAIR

14  Mark in connection with its sale of unauthorized products online, including, but not

15  limited to, Walmart.com. Defendant has not now, nor has it ever, been affiliated with

16  CORSAIR and CORSAIR has never authorized Defendant to use the CORSAIR Mark

17  or permitted Defendant to sell CORSAIR Products. *Id.* ¶ 23.  Indeed, CORSAIR has

18  also sufficiently alleged, and shown, that Defendant's use of the CORSAIR Mark is

19  likely to – and actually does – cause consumer confusion. *Id.* ¶¶ 48-58.  Further, "[t]he

20  sale of gray market products under the same trademarks as the authorized products is

21  likely to confuse customers if these gray market products differ materially from the

22  authorized products." *Pepsico, Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059 (C.D. Cal.

23  1999) (holding that "products that are intended for sale abroad and imported into the

24  U.S. market to compete with the sale of products authorized for sale in the U.S." are

25  gray market products in violation of the Lanham Act).  Here, the Defendant is offering

26  for sale CORSAIR Products designed, manufactured, and intended for sale into a

27  specific geographic market (*e.g.*, the United States market and the Asia market), but

28  fulfilling orders with materially different CORSAIR Products designed and intended

for sale to a different geographic market.  Defendant has made commercial use of the
CORSAIR Marks and CORSAIR's trade name in connection with its business and these
acts have caused injury to CORSAIR's good will and reputation. ECF 1, Compl. ¶¶ 7,
53-54, 57. Defendant displayed these marks prominently on Walmart.com in a manner
that is likely to cause confusion, mistake, or to deceive as to its affiliation, connection,
or association of CORSAIR with Defendants advertisement and sale of materially
different CORSAIR Products (*e.g.* products which are not covered by the CORSAIR
Warranty and sale of CORSAIR Products designed and manufactured for resale into a
different geographic market than the advertised geographic market). *Id.* ¶¶ 29-31, 49.
Thus, CORSAIR has sufficiently pleaded a cause of action for false designation of
origin.

### c.    *Violation of California Business & Professions Code §§ 17200 et seq.*

The Ninth circuit has "consistently held that state common law claims of unfair
competition and actions pursuant to California Business and Professions Code § 17200
are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News
Corp.*, 30 F.3d 1155, 1262–63 (9th Cir. 1994) (citations omitted).  Because CORSAIR
successfully alleges its claims for trademark infringement, false designation of origin,
and false advertising under the Lanham Act, CORSAIR has also sufficiently stated its
claim under the California Business & Professions Code.  *See BTL Indus.*, 2023 WL
8043830, at *5 (holding that plaintiff sufficiently stated a claim for unfair competition
and false designation of origin under California common law where plaintiff had
already adequately alleged its claim of trademark infringement under the Lanham Act);
*Zo Skin*, 2022 WL 18397631 at *3 (considering plaintiff's false designation of origin,
common and federal law trademark infringement, state and federal law unfair

competition, and state common law unfair competition claims together under the framework for trademark infringement under the Lanham Act).

### 3.     CORSAIR Does Not Seek Monetary Damages

Pursuant to the fourth *Eitel* factor, the court must also consider the amount a plaintiff requests in monetary damages. *Elektra Ent. Grp*, 226 F.R.D. at 393 (C.D. Cal. 2005) (citing *Eitel*, 782 F.2d at 1471–72). Here, CORSAIR requests a permanent injunction and does not seek monetary damages. As such, this factor favors granting default judgment as well.

### 4.     There is No Possibility of Disputed Material Facts

The fifth *Eitel* factor considers whether there is any likelihood of dispute between the parties regarding the material facts surrounding the case. *Craigslist, Inc. v. Naturemarket, Inc*., 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). "[A]ll allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, [meaning that] there is no likelihood that any genuine issue of material fact exists." *Elektra*, 226 F.R.D. at 393; *see also Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citations omitted) ("Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party."). Here, CORSAIR filed a well-pleaded Complaint alleging the elements necessary to prevail on each cause of action and the Clerk of Court entered default on October 16, 2024. ECF 1, 14. Therefore, taking all allegations as true, there is no likelihood that any genuine issue of material fact exists in this matter, "indicat[ing] the propriety of entry of default judgment." *Elektra*, 226 F.R.D. at 393.

### 5.     Defendant's Default Was Not Due to Excusable Neglect

Under the sixth *Eitel* factor, Ninth Circuit courts consider whether Defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471–72. No facts suggest that Defendant's failure to participate in this action is a result of excusable neglect. In fact, courts in the Ninth Circuit have routinely held that "[t]he possibility of excusable

16

neglect is remote when the defendant has been properly served or is aware of the lawsuit." *BTL Indus.*, 2023 WL 8043830, at *6; *Zo Skin*, 2022 WL 18397631, at *8 (same).

Because Defendant was properly served, Defendant's failure to respond is almost certainly not excusable neglect, which means that this *Eitel* factor also weighs heavily in CORSAIR's favor.

### 6.    Defendant's Conduct Frustrates Policies Favoring Merit-Based Decisions

The final *Eitel* factor contemplates the strong policy preference for deciding cases on the merits. *BTL Indus.*, 2023 WL 8043830, at *6 (quoting *Eitel*, 782 F.2d at 1472); *see also Amini Innovation*, 768 F. Supp. 2d at 1056 ("The policy favoring resolution of the case on the merits always weighs against default judgment). However, "[n]otwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant's failure to appear and respond makes a decision on the merits impractical, if not impossible, default judgment is appropriate." *Zo Skin*, 2022 WL 18397631, at *8 (quoting *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc.*, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017)). In other words, a court "may consider [d]efendant['s] failure to respond to [a p]laintiff's requests for default and default judgment as admissions that the motions have merit. *See Clark Equip.*, 2022 WL 4594238, at *3. Here, Defendant failed to appear or otherwise respond to the Complaint, which necessarily prevents a decision on the merits. Defendant's failure to respond cannot be treated as excusable neglect, and therefore, even taking into account the policy of favoring decisions on the merits, this factor is outweighed by all of the other factors, all of which favor default judgment.

### IV.    RELIEF SOUGHT

Defendant has demonstrated that it is indifferent to any attempt by CORSAIR to enforce their actions. Defendant's failure to defend suggests that their "infringing activities will not cease absent judicial intervention." *Warner Bros. Home Ent. Inc. v.*

*Jimenez*, No. CV 12-9160 FMO (JEMx), 2013 WL 3397672, at *7 (C.D. Cal. July 8, 2013); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096 (N.D. Cal. 2003) ("[D]efendants' lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease."). For these reasons, injunctive relief is necessary to prevent Defendant from continuing its false and misleading product labeling, descriptions, and advertisements.

Under the Lanham Act, district courts have the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the tradeowner." *Wecosign Inc. v. IFG Holdings, Inc.,* 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) (internal quotation marks and citations omitted). To be sure, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Id.* at 1083 (citations omitted). To obtain a permanent injunction, a plaintiff must meet a four-part test, showing: (1) irreparable harm; (2) that monetary damages are inadequate; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction would benefit the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391. Here, CORSAIR satisfies each element and should be granted a permanent injunction.

### 1.    CORSAIR Faces Irreparable Harm that Cannot Be Fixed by Monetary Damages

CORSAIR has established that it has suffered – and continues to suffer – irreparable harm at the hands of the Defendant. As a preliminary matter, "[i]n cases of trademark infringement, the party seeking injunctive relief 'shall be entitled to a rebuttable presumption of irreparable harm upon a finding of infringement.'" *BTL Indus.*, 2023 WL 8043830, at *8 (quoting 15 U.S.C. § 1116(a)). Where this rebuttable presumption applies and a defendant has not attempted to rebut that presumption, courts in the Ninth Circuit have found that the plaintiff established irreparable harm. *See id.*; *loanDepot.com*, 2022 WL 2155974, at *1 (presuming irreparable harm where plaintiff

stated a claim for trademark infringement, demonstrated a likelihood of success on the merits of that claim, and where defendant had "not appeared and therefore present[ed] no evidence rebutting the presumption"); *see also Amazon.com, Inc. v. KexleWaterFilters*, NO. C22-1120 JLR, 2024 WL 2781949, at *7 (W.D. Wash. May 30, 2024) (finding Plaintiffs satisfied irreparable injury element because plaintiff was entitled to the rebuttable presumption of irreparable harm upon a finding of a trademark violation).  Not only is injunctive relief the preferred remedy, but also remedies at law are inadequate in cases of trademark infringement, where the "[i]njury to the trademark owner's reputation and goodwill as to consumer expectations is difficult, if not impossible, to adequately compensate for after the fact."  *BTL Indus.*, 2023 WL 8043830, at *8 (quoting *Daimler*, 498 F. Supp. 3d at 1292 (S.D. Cal. 2020)).

In the instant case, CORSAIR is entitled to a rebuttable presumption of irreparable harm because CORSAIR properly stated a claim for trademark infringement and demonstrated the likelihood of success on the merits of that claim.  *See loanDepot.com*, 2022 WL 2155974, at *1.  Furthermore, CORSAIR has sufficiently alleged that Defendant has used and will likely continue to use the CORSAIR Mark, and CORSAIR has established the likelihood of customer confusion and damage to its business, reputation, and goodwill.  There is no other adequate remedy at law because Defendant's false advertisement and unauthorized advertisement and sale of non-genuine CORSAIR Products through Walmart, as well as other channels, has threatened CORSAIR's business, reputation, and goodwill.  *See Nautilus, Inc. v. Chunchai Yu*, 2010 WL 11549345, at *14 (C.D. Cal. Nov. 8, 2010); *KexleWaterFilters*, 2024 WL 2781949, at *7.  Additionally, Defendant's failure to appear in this action suggests that their infringing behavior and misconduct will likely continue absent injunctive relief in favor of CORSAIR.  *See KexleWaterFilters*, 2024 WL 2781949, at *7.

### 2.    The Balance of Hardships Favors CORSAIR

The balance of hardships favors CORSAIR, as "[d]efendants face no hardship in being enjoined from conducting illegal activities[.]" *Rolex Watch U.S.A., Inc. v. Watch*

19

*Empire LLC*, CV 12-09221-SJO (FFmx), 2015 WL 9690322, at *8 (C.D. Cal. Sept. 29, 2015). Without an injunction, CORSAIR will continue to suffer irreparable harm from Defendant's trademark infringement and false and misleading product labeling, descriptions, and advertisements. On the other hand, Defendant's false advertising should not merit any equitable consideration here because Defendant has chosen not to participate in this judicial proceeding, not to respond to the Complaint in any way, and has shown no sign of otherwise abating its conduct. If an injunction is not granted in favor of CORSAIR, Defendant may continue its injurious conduct simply by ignoring the lawsuit and default entered in this case.

On August 23, 2024, Defendant's CEO Mr. Arnold Handler was served in-hand with the Summons and Complaint. Notwithstanding, Defendant made the strategic decision not to participate in this action. Instead, Defendant decided to ignore this action and engage CORSAIR in a game of whack-a-mole, hiding behind its other seller accounts and websites to continue its unlawful conduct. For example, the other online websites which Defendant advertises and sells on includes Amazon.com. *See* ECF 1, Compl. ¶ 2 ("Defendant has and continues to falsely advertise the CORSAIR Products it sells and delivers to consumers in the United States on the Internet via online commerce sites, *including, but not limited to*, Walmart.com."). If Defendant, its agents including, but not limited to, Mr. Arnold Handler, representatives, other seller accounts, and websites are not enjoined, CORSAIR will continue to be injured, simply because Defendant may cease its infringing conduct under its Walmart seller account "Classy Outfit" and "reinvent" itself as another seller. In *Epson America Inc. v. Century21 Elecs.*, this court found that the balance of hardships favored plaintiff, because defendant was "only [] enjoined from these specific infringement and false advertisement acts. It [could] still continue to sell products without falsely advertising." 2017 WL 8160095, at *6. Just as in *Epson Am. Inc. v. Century21 Elecs.*, CORSAIR seeks to enjoin Defendant, its agents, representatives, partners, websites, and seller accounts from falsely advertising CORSAIR Products. Specifically, Defendant's seller

20

account includes Walmart seller account Classy Outfit and Amazon Seller Account 680 Wash LLC d/b/a Smooth Value. These accounts are operated by Mr. Arnold Handler, who was specifically served with the Summons and Complaint on August 23, 2024 and chose ignore the lawsuit. Thus, the equities weigh heavily in favor of injunctive relief. *See, e.g.*, *Wecosign*, 845 F. Supp. 2d at 1084 ("[W]ithout an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.").

### 3.    Injunctive Relief Serves the Public Interest

Granting an injunction here serves the public interest by ensuring that Defendant, a bad actor in the marketplace, ceases its misconduct. As a general mater, "[t]he public interest is served by upholding rights under [the] Lanham Act." *loanDepot.com*, 2022 WL 2155974, at *2 (citation omitted). In trademark infringement cases, the public has an interest in its right not to be deceived or confused. *BTL Indus.*, 2023 WL 8043830, at *8 (quoting *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, 2022 WL 3908831, at *6 (C.D. Cal. Aug. 30, 2022)). "Where a 'defendant's concurrent use of [a] plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use.'" *Id.* (quoting *Chalon Adventures, Inc. v. Fullerton Lounge, Inc.*, 2019 WL 2896131, at *5 (C.D. Cal. Mar. 7, 2019)); *see also Wecosign*, 845 F. Supp. 2d at 1084 (quoting *Internet Specialties West, Inc. v. Milon-DiGorgio Enters., Inc.*, 559 F.3d 984, 993 n.5 (9th Cir. 2009)) ["[A]n injunction is in the public interest because '[t]he public has an interest in avoiding confusion between two companies' products."]). As alleged in the complaint and discussed herein, Defendant continually uses the CORSAIR Mark without authorization, concurrently with CORSAIR's own use, including on the same website (Walmart.com). This alone creates consumer confusion. Additionally, Defendant's false and misleading product labeling, descriptions, and advertisements creates consumer confusion.

For these reasons, the public interest also heavily favors entry of a permanent injunction.

**[PROPOSED] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**
Case No. 3:24-cv-04612-TLT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### V.    <u>CONCLUSION</u>

For the foregoing reasons, CORSAIR's Motion for Default Judgment (ECF 15) is GRANTED.  The Court grants the injunction enjoining Defendant from (1) using CORSAIR's intellectual property; (2) selling, or taking steps to sell, any of CORSAIR's products on Walmart.com under the seller name Classy Outfit or Amazon.com under the seller name Smooth Value (Amazon Seller ID A36P3JXUIECQ51); (3) engaging in unfair competition with CORSAIR; and (4) inducing, assisting, or abetting other persons or entities in engaging in the same.

IT IS SO ORDERED

Dated: December    , 2024                    _____

**[PROPOSED] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**
Case No.  3:24-cv-04612-TLT